UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                      | )  |                          |
|--------------------------------------|----|--------------------------|
| **KING & SPALDING, LLP,**            | )  |                          |
|                                      | )  |                          |
| **Plaintiff,**                       | )  |                          |
|                                      | )  |                          |
| v.                                   | )  | Case No. 16-cv-01616 (APM) |
|                                      | )  |                          |
| **U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.,** | ) |  |
|                                      | )  |                          |
| **Defendants.**                      | )  |                          |
|                                      | )  |                          |

## MEMORANDUM OPINION

### I. INTRODUCTION

In April 2016, Plaintiff King & Spalding LLP submitted Freedom of Information Act ("FOIA") requests to the U.S. Department of Health and Human Services ("HHS") and the U.S. Department of Justice ("DOJ") (collectively "Defendants"), seeking documents provided to the government by any person or entity concerning Abiomed, Inc. Abiomed is a medical device company represented by Plaintiff. The requests sought records for the period between January and October 2012.

The court already has ruled on two prior rounds of summary judgment briefings. The only remaining questions are: (1) whether the government must disclose the name of the law firm that represented an anonymous source who, through counsel, submitted information about Abiomed to the government, and (2) whether the court should reconsider its prior ruling permitting the government to withhold the names of the attorneys who represented the source.

Before the court is Defendants' Motion for Summary Judgment as to the first question and Plaintiff's combined Cross Motion for Summary Judgment as to the first question and Motion for

Reconsideration as to the second. For the following reasons, Defendants' Motion is denied, and Plaintiff's Motion is granted in full.

## II. BACKGROUND

The court described the facts of this matter in its September 2018 decision, so it does not repeat them here at length. *See generally King & Spalding LLP v. United States HHS*, 330 F. Supp. 3d 477 (D.D.C. 2018) [hereinafter *King & Spalding II*]. To summarize, Plaintiff King & Spalding LLC submitted three FOIA requests in April 2016, seeking all documents received by either HHS or DOJ from any outside person or entity (except Abiomed) concerning Abiomed, between January 1 and October 31, 2012. *Id*. at 483. The request followed a 2012 investigation by the U.S. Attorney's Office for the District of Columbia of Abiomed centered on alleged off-label marketing of a medical device. *Id*. at 482. The investigation ended three years later without enforcement action. *Id*. The investigation may have commenced upon information provided from an anonymous source who disclosed records through a private attorney. *Id*. at 482–83. Abiomed suspects that Maquet, one of its competitors, was the source. *Id*. at 483.

Defendants initially released over 370 pages and withheld 67 pages in full in response to Plaintiff's requests. *Id*. at 484. Defendants justified these withholdings under FOIA Exemptions 6 and 7(C), which concern the privacy interests of individuals identified in agency records, and 7(D), which protects confidential sources. *Id*. Defendants made a supplemental release in April 2017 of 46 pages in full and 33 pages in part. *Id*. Defendants again justified the redactions under Exemptions 6, 7(C), and 7(D). *Id*. The government also relied on Exemptions 4 and 5 to withhold certain information from attachments to a produced email, which Plaintiff ultimately would not challenge. *Id*. at 485; Plaintiff's Combined Cross Mot. for Summ. J. and Mot. for Reconsideration,

ECF No. 52 [hereinafter Pl.'s Mot.]; Pl.'s Facts, ECF No. 52 at 3–9 [hereinafter Pl.'s Facts], ¶¶ 25–26.

Plaintiff filed its Complaint on August 9, 2016. *See* Compl., ECF No. 1. On September 6, 2017, the court denied both parties' motions for summary judgment without prejudice and held that the government had not sufficiently justified its withholdings under Exemptions 7(C) and (D). *See generally King & Spalding, LLP v. United States Dep't of HHS*, 270 F. Supp. 3d 46 (D.D.C. 2017) [hereinafter *King & Spalding I*]. The court stated that "the applicability of both exemptions may turn on whether the source that supplied the Government with information about Abiomed is an entity or an individual," and found that the government's failure to state whether its anonymous source was an individual or entity prevented the court from "evaluat[ing] the propriety of nondisclosure." *Id.* at 48–49. The court provided Defendants an opportunity to supplement the record.

On September 22, 2017, Defendants advised the court that they had no additional information to offer as to whether the confidential source was an individual or entity. *See* Joint Status Report, ECF No. 29, ¶ 5. Nevertheless, Defendants stated that they intended to renew their summary judgment motion. *See id.* ¶¶ 7–9.

The court ruled on the parties' second round of cross-motions for summary judgment on September 7, 2018. *See generally King & Spalding II*, 330 F. Supp. 3d 477. The court held "that Defendants have failed to justify their invocation of Exemption 7(D)," and ruled in favor of Plaintiffs with regard to the 67 pages withheld under that exemption. *Id*. at 496. With respect to Exemptions 6 and 7(C), Defendants narrowed their argument, asserting that these exemptions were

3

only in support of its withholding of the names of the attorney[1] and the law firm representing the confidential source. *Id*. at 486, 488. The court granted summary judgment to Defendants as to the attorney's name. Focusing on Exemption 7(C), the court applied a "categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *id*. at 497 (quoting *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003)). The court reasoned that, because Plaintiff had not "come forward with 'compelling evidence' that would confirm or refute allegations of illegal agency activity, Plaintiff cannot overcome application of the categorical rule in this case." *Id*. at 497–98.

With regard to the law firm, the court found that Defendants had not carried their burden to show that disclosure would risk identifying the lawyer. (As an entity, neither Exemption 7(C) nor 6 applied directly to the law firm.). *Id*. at 499–500. The court nevertheless allowed Defendants to submit additional facts to support their assertion that the disclosure of the firm's name could "reasonably be expected to constitute an unwarranted invasion of the lawyer's personal privacy." *Id*. at 500. Defendants did so on October 9, 2018, providing an *in camera* submission to the court. *See* ECF No. 40. Afterwards, the parties met and conferred, narrowing the remaining issues. *See* Plaintiff's Status Report, ECF No. 46, ¶¶ 6–9.

Both parties now move for summary judgment as to the non-disclosure of the law firm's name. *See* Defendants' Second Renewed Mot. for Summ. J., ECF No. 51 [hereinafter Defs.' Mot.]; Pl.'s Mot. at 16–20. Plaintiff also asks the court to reconsider its prior ruling upholding Defendants' withholding of the attorneys' names under Exemption 7(C). *See* Pl.'s Mot. at 7–15.

---

[1] The government previously stated that one attorney had provided the information at issue. *See* Defs.' Second Mot. for Summ. J., ECF No. 32, at 4; Pl.'s Facts ¶ 21. This was the court's understanding in its September 2018 decision. *See generally King & Spalding II*, 330 F. Supp. 3d 477. The government now states that there were three attorneys. *See* Third Decl. of Tricia Francis, ECF No. 39-2, ¶ 1. The analysis is the same regardless of the number of attorneys.

4

## III.     DISCUSSION

### A.     Motion for Reconsideration as to Attorneys' Names

The court begins with Plaintiff's motion asking the court to reconsider its prior ruling that Defendants properly withheld the names of the confidential source's lawyers under Exemption 7(C). Federal Rule of Civil Procedure 54(b) applies to any order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" and provides that such an order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Relief under Rule 54(b) may be granted "as justice requires." *See Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011). "Courts in this district interpret that abstract phrase narrowly and will grant a motion to reconsider 'only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order.'" *Bernier v. Trump*, 299 F. Supp. 3d 150, 156 (D.D.C. 2018) (quoting *Ferrer v. CareFirst, Inc.*, 278 F. Supp. 3d 330 (D.D.C. 2017)).

In its previous decision, the court applied a categorical withholding rule based on the D.C. Circuit's decision in *SafeCard Services v. SEC*. *See King & Spalding II*, 330 F.3d at 497 (citing *SafeCard Servs.*, 976 F.2d 1197, 1206 (D.C. Cir. 1991)). *SafeCard* permits agencies to withhold personal identifying information mentioned in law enforcement records under Exemption 7(C), unless disclosure is necessary to "confirm or refute compelling evidence that the agency is engaged in illegal activity." *Id.* at 497. Because the court found that Plaintiff had not provided evidence that "warrant[s] a belief by a reasonable person that the alleged Government impropriety might have occurred," the court applied the categorical rule to permit the agency to

5

withhold the lawyers' names. *Id.* at 499 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)).

Plaintiff contends that the court "painted with too broad a brush" by applying *SafeCard*'s "categorical rule." Pl.'s Mot. at 9. The "categorical rule" is inapt in this case, Plaintiff maintains, because that approach fails to account for the D.C. Circuit's pre-*SafeCard* decision in *Washington Post v. U.S. Department of Justice*, 863 F.2d 96 (D.C. Cir. 1988). In that case, Plaintiff argues, the court held that "Exemption 7(C) protects a specific category of privacy interests" that does not include "business and professional activities," such as those at issue here. Pl.'s Mot. at 10. (citing *Washington Post*, 863 F.2d at 100). Defendants, for their part, counter that in the thirty years since *Washington Post*, "courts in this Circuit and elsewhere have expanded the types of information that can implicate Exemption 7(C)" to withhold information regardless of "whether their names appear in government records in their personal or professional capacity." Defs.' Combined Opp'n. to Pl.'s Cross Mot. and Reply to Pl.'s Opp'n to Def.'s Mot, ECF No. 57 [hereinafter Defs.' Opp'n.], at 1, 6. They contend that withholding the lawyers' names easily fits within this expanded notion of "personal privacy." *Id*. at 13; 5 U.S.C. § 552(b)(7)(C).

In *Washington Post*, the D.C. Circuit held that "[i]nformation relating to business judgments and relationships does not qualify for exemption [under Exemption 7(C)]. This is so even if disclosure might tarnish someone's professional reputation." *Washington Post*, 863 F.2d at 100 (internal citations omitted). As Defendants point out, however, in the years since *Washington Post*, higher courts have recognized that "personal privacy" protection under Exemptions 7(C) and 6 can extend to information relating to a person acting in her business capacity. Cases cited by Defendants highlight this pattern. For example, in *McCutchen v. U.S. Department of Health & Human Services,* the D.C. Circuit held that Exemption 7(C) applied

6

to the names of scientists receiving federal funds who were exonerated of wrongdoing following an Office of Inspector General investigation. *See* 30 F.3d 183, 188 (D.C. Cir. 1994). The court expressly distinguished the case from *Washington Post*, observing that unlike *Washington Post* the case involved "the stigma that hangs over the targets of law enforcement investigations" that "can damage a career." *Id.* at 187*; see also Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 390–92 (D.C. Cir. 1987) (holding in a pre-*Washington Post* case that the agency properly withheld information that might identify attorneys who were the subject of dismissed disciplinary investigations). *Judicial Watch v. FDA* similarly held that there was a valid privacy interest under Exemption 6 where there was the potential for harassment and violence towards persons who developed a medical abortion drug or participated in the FDA approval process of the drug. *See Judicial Watch v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006). *SafeCard* itself dealt with the disclosure of witnesses and litigants in various SEC stock manipulation investigations, and the court—noting that subjects of investigations can be exposed to "embarrassment and potentially more serious reputational harm"—held that Exemption 7(C) "affords broad[] privacy rights to suspects, witnesses, and investigators." *SafeCard*, 926 F.2d at 1205 (internal citation omitted). And, finally, in two other cases, *Department of Defense v. Federal Labor Relations Authority* and *National Association of Retired Federal Employees v. Horner,* the Supreme Court and the D.C. Circuit, respectively, held that the disclosure of names and home addresses of low-level government employees—and, in the case of *Horner*, whether such persons were retired, disabled, or received an annuity from the federal Government—was exempted from disclosure under Exemption 6 because of a privacy interest in avoiding solicitations by unions or "business or fund-raising organization[s] for which such individuals might be an attractive market." *Horner*, 879 F.2d 873, 876–78 (D.C. Cir. 1989); *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510

7

U.S. 487, 501 (1994) (holding, under Exemption 6, that government employees had "*some* nontrivial privacy interest in nondisclosure, and in avoiding the influx of union-related mail, and, perhaps, union-related telephone calls or visits, that would follow disclosure").

As these cases show, for purposes of FOIA, a person's "personal privacy" interest is not strictly cabined to information connected to her personal capacity. But that does not mean the limiting principle of *Washington Post* has lost its vitality. A recent decision from the D.C. Circuit confirms as much. *Doe 1 v. Federal Election Commission* involved an investigation by the Federal Election Commission of a $1.7 million contribution made by a trust to a political action committee by way of two pass-through entities. *See* 920 F.3d 866, 868 (D.C. Cir. 2019). Following the investigation, the Commission entered into a "conciliation agreement" with various entities involved in the contribution, though the trust and trustee were not parties to the agreement and were not identified in it. *Id*. at 869. Pursuant to its disclosure policy, the Commission announced it would release various documents from the investigation, some of which identified the trust and trustee. *Id*. The trust and trustee sought to enjoin the Commission from revealing their identities, likening their claim to a "reverse FOIA" action. *Id.* at 869, 871–72. The Circuit held that "FOIA cannot be used to prevent the Commission from publicly revealing plaintiffs' identities," where there was no pending FOIA request, neither plaintiff had provided information to the Commission, and the disclosure was pursuant to other statutory provisions. *Id*. at 872. The court also went on to reaffirm the key limiting principle of *Washington Post.* The court observed that, "under Exemption 7(C), the Commission would not have had discretion to withhold information identifying the trust in response to a FOIA request." *Id.* The trust itself, as an entity, had no privacy interest. Nor was the court troubled by the assertion that disclosing the name of the trust would reveal the name of the trustee, noting that "the trustee's privacy interest in his

8

*representational capacity* is minimal." *Id*. at 873 (emphasis added). Citing *Washington Post*, the court emphasized the "intimate personal nature" of FOIA's privacy protection, and that "information relating to business judgments and relationships does not qualify for exemption. This is so even if disclosure might tarnish someone's professional reputation." *Id.* (quoting *Washington Post*, 863 F.3d at 100) (internal citation omitted). The D.C. Circuit therefore concluded that FOIA did not require the Commission to withhold the trust's and trustee's names. *Id.*

This court draws two conclusions from these authorities. First, the court clearly erred when it applied *SafeCard* without considering the limits placed on Exemption 7(C)'s "personal privacy" interest by *Washington Post*. Second, the court mistakenly assumed that the lawyers had a personal privacy interest in their names simply because their names appeared in criminal investigative files. Upon reconsideration, the court now finds that disclosure of the lawyers' names would not result in "an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Unlike the post-*Washington Post* authorities cited by Defendants, disclosure presents none of the threats to personal privacy that courts have recognized as "unwarranted," even in a person's professional capacity. The attorneys here were not accused of any misconduct and they were not witnesses to alleged wrongdoing. Thus, disclosing their names would not result in "embarrassment and potentially more serious reputational harm." *SafeCard*, 926 F.2d at 1205. Nor do Defendants present any evidence (including within the *in camera* submission) that disclosure would place at risk the lawyers' personal safety or expose them to harassment. The lawyers merely represented the confidential source in relaying information to the government, presumably at the direction of their client. *See Doe 1*, 920 F.3d at 868 ("[T]he trust, presumably at the direction of its trustee, wired $2.5 million to Government Integrity."). Thus, the lawyers, like the trustee in *Doe 1*, have little or no privacy interest in their "representational capacity" as counsel to the confidential source.

9

*Id.* at 873. Additionally, lawyers regularly advertise their services on law firm websites and in other marketing material, thereby diminishing any reasonable expectation of personal privacy when acting in their representational capacities. With no "personal privacy interest" at stake, Defendants cannot rely on Exemption 7(C) to withhold the lawyers' names.

Defendants attempt to distinguish this case from *Doe 1*, because that matter dealt not with a FOIA request but a "reverse FOIA" action, which is evaluated under the Administrative Procedure Act's "arbitrary and capricious" standard of review. *See* Defs.' Supp. Mem., ECF No. 60 [hereinafter Defs.' Supp.]. "[B]ecause John Doe involved a reverse-FOIA action," Defendants maintain, "the Court did not engage, de novo, in an Exemption 7(C) balancing to determine whether the information should be withheld under FOIA under the circumstances of that particular case." *Id*. at 2. Defendants also argue that, because the Circuit faced the question in the reverse-FOIA context, it did not "engage in a thorough analysis of the full panoply of Exemption 6 and 7(C) case authority." *Id*. These efforts to distinguish *Doe 1* are not persuasive. To be sure, *Doe 1* arose in a different procedural context than this case. But that distinction is not material. *Doe 1* confirms that the limitations placed on Exemption 7(C) by the Circuit in *Washington Post* remain meaningful, and that courts must evaluate whether a protectable personal privacy interest exists as to "business judgments and relationships" on a case-by-case basis. The court did not do so before, and it corrects that error now.

The court also now rules that Exemption 6 likewise does not protect the lawyers' names from disclosure. The "personal privacy" interest protected under Exemption 6 is the same as under Exemption 7(C). *See FCC v. AT&T Inc.*, 562 U.S. 397, 408 (2011). With no "personal privacy" interest to protect, the lawyers' names are not protected from disclosure under Exemption 6 either.

*See Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980) ("Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships.").

### B. Motion for Summary Judgment as to Law Firm Name

The court previously allowed Defendants to supplement the record to show that disclosing the law firm name would result in an "unwarranted invasion of the lawyer's personal privacy." *King & Spalding II*, 330 F. Supp. 3d at 500. Given the court's revised decision holding that the lawyers' names are not protected from disclosure by a FOIA exemption, there is no basis to withhold the law firm's name. *Cf. Doe 1*, 920 F.3d at 873 (holding that trust's name should be disclosed even if it reveals the identity of the trustee).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, ECF No. 51, is denied. Plaintiff's Combined Cross Motion for Summary Judgment and Motion for Reconsideration, ECF No. 52, is granted.

A separate final appealable order accompanies this Memorandum Opinion.

Dated: July 24, 2019

Amit P. Mehta
United States District Judge