UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KING & SPALDING LLP<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES, et al.<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 16-cv-01616 (APM)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and 5 U.S.C. § 552(a)(4)(E), Plaintiff King & Spalding LLP moves for an Order awarding reasonable attorneys' fees and litigation costs incurred over the three-and-a-half years it spent litigating this action. As the prevailing party, King & Spalding is eligible for and deserving of an award of fees and costs. On February 3, 2020, defendants through counsel stated they will oppose this motion.

## BACKGROUND

This motion caps off nearly four years of unnecessary wrangling over the release of public records due to King & Spalding under the Freedom of Information Act (FOIA). On April 14, 2016, the firm submitted narrowly tailored FOIA requests to the U.S. Department of Health and Human Services ("HHS"), the U.S. Food and Drug Administration ("FDA"), and the U.S. Department of Justice ("DOJ") seeking documents related to the federal government's 2012 investigation of Abiomed, Inc., a medical device company. *See* ECF No. 20 ¶¶ 2, 10. King & Spalding's request asked for documents that were from a short time frame, that avoided

1

deliberative material, and that excluded communications from Abiomed to the government. These carefully tailored requests could have been easily and expeditiously responded to in full with limited expenditure of resources. Instead of responding quickly, the government dragged its feet, costing King & Spalding hundreds of thousands of dollars in attorneys' fees and costs. Aside from a limited production from the FDA, neither HHS nor DOJ released any documents to King & Spalding for almost four full months. *See generally* ECF No. 13 (detailing the pre-litigation history of the FOIA requests). At the same time, the government failed to put forward any colorable basis for withholding the records. *See* ECF No. 13 ¶ 10. So, King & Spalding sued. *See* ECF No. 1; *see also* 5 U.S.C. § 552(a)(4)(B) (granting federal courts the power to compel FOIA productions).

Yet despite being haled into court, the government's foot-dragging continued. It constantly sought to delay production and briefing deadlines, *see* ECF No. 9; ECF No. 12; ECF No. 13 ¶ 8; ECF No. 15, and did not finish releasing the *uncontested* documents for nearly eight months after King & Spalding's initial FOIA requests. *See* ECF No. 29 ¶ 4. On December 5th and 8th 2016, The U.S. Centers for Medicare and Medicaid Services ("CMS"), a component of HHS, released documents in full and did not claim any exemptions to withhold documents or make redactions. Exhibits C & D. On December 23, 2016, the Executive Office for United States Attorneys ("EOUSA"), a component of DOJ, made two productions. In the first, EOUSA released 344 pages in full and withheld fifty-one pages in full. Exhibit E. In the second, EOUSA released twenty-seven pages in full and withheld sixteen pages in full. Exhibit F. The productions were not complete until April 5, 2017, when EOUSA released forty-six pages in full and released thirty-three pages with redactions. Exhibit G.

It then attempted to stall litigation over the withheld documents and redactions by any means necessary. Indeed, the government rarely missed an opportunity to request a protracted briefing schedule or extension. *See* ECF No. 18 ¶¶ 7, 8; ECF No. 29 ¶¶ 12, 19; ECF No. 30. It then took advantage of this Court's patience, requiring multiple rounds of summary judgment papers just to establish the factual predicates for its most hotly contested redactions, *which the government had the burden to prove*. *See* ECF No. 28 at 1; ECF No. 38 at 31–32. And when King & Spalding's persistence finally paid off, the government took nearly *six more months* to produce the remaining records even after this Court ruled they must release the remaining documents with only minor redactions. *See* Exhibit H. On January 22, 2020, EOUSA finally made a production of seventy-nine pages with very minor redactions. *Id*. EOUSA's letter makes clear that *all documents previously withheld in full were now being turned over with only minor redactions* and some documents that were previously released with redactions were being re-released with modified redactions. The government was finally forced to give way and *not one single responsive document that was disputed in this case was withheld in full by EOUSA* (at least not that the government told King & Spalding about in its release letters, *see* Exhibits C–H). King & Spalding's victory is complete.

Although late-coming, the released documents have shed light on matters of public concern. As King & Spalding long suspected, the government attorneys spearheading the Abiomed investigation acted at the urging of a former colleague who had left the Justice Department for private practice. *See* Exhibit H, Items 1, 9, 10, 11, 12, & 16. That attorney's firm, in turn, represented one or more private interests with obvious stake in frustrating Abiomed's business. *Id.*, Item 12 (Letter to FDA dated December 21, 2010). Accordingly, by providing

3

this window into the government's troubling prosecutorial conduct, this lawsuit has doubtless furthered the public interests Congress enacted FOIA to serve.

In light of the public interest in these documents, King & Spalding's private burdens litigating this case, and the government's obdurate behavior, King & Spalding now moves for an award of reasonable attorneys' fees and costs under FOIA's statutory fee-shifting provision.

## ARGUMENT

The Court should award King & Spalding reasonable fees and costs for persisting against a stubborn government defense, despite King & Spalding's narrow and reasonable FOIA request, and bringing valuable public records to light. To receive such an award under FOIA, a party must be both "eligible" for fees and "entitled" to fees. *See, e.g.*, *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). Here, King & Spalding is eligible for fees because of its early success prompting government productions and because of its ultimate victory on highly contested issues. The firm is likewise *entitled* to fees because (1) its FOIA requests concerned matters of public interest, (2) it persisted in this litigation notwithstanding its private incentive to fold, and (3) the government should face some consequence for its obdurate behavior. Finally, King & Spalding's requested award is reasonable in light of the time and effort spent dogging the government through numerous obfuscations and delays over the past three-and-a-half years.

**I.     King & Spalding Has Won a Complete Victory in this Litigation.**

As a threshold matter, King & Spalding is eligible for an award of fees and costs under the FOIA statute. Statutory eligibility extends to any party that "substantially prevail[s]" against the government in a FOIA case. 5 U.S.C. § 552(a)(4)(E)(i). To "substantially prevail[]," a party must obtain "a judicial order," "an enforceable written agreement or consent decree," or "a

4

voluntary or unilateral change in position by the agency." *Id.* § 552(a)(4)(E)(ii)(I)–(II). King & Spalding has "substantially prevailed" in multiple respects.

*First*, King & Spalding won this case at the summary judgment stage. Naturally, a party that receives judgment on the merits has "substantially prevailed." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008). In this case, the firm obtained multiple orders from this Court granting summary judgment in its favor. On September 7, 2018, after two rounds of summary judgment briefing, the Court ordered release of sixty-seven pages of responsive documents that the government had previously withheld in full. *See* ECF No. 38 at 40. Several months later, after another round of briefing, the Court granted King & Spalding's remaining production requests "in full." ECF No. 62 at 1–2. This included requests for information that the Court had previously rejected as exempt, only to reconsider in King & Spalding's favor. *See id.* at 5–11. As a result, the government eventually produced all the disputed documents with only minor redactions. Exhibits C–H.

*Second*, King & Spalding's persistence in this case caused a voluntary shift in the government's sputtering response to the initial FOIA requests. Even absent final judgment on the merits, a plaintiff can "substantially prevail" by "caus[ing] a change in the agency's position regarding the production of requested documents." *Grand Canyon Tr. v. Bernhardt*, No. 18-5232, 2020 WL 253019, at *4 (D.C. Cir. Jan. 17, 2020) (per curiam); *see also Brayton*, 641 F.3d 521, 524–25 (D.C. Cir. 2011) (describing congressional reinstatement of the "catalyst theory" through 5 U.S.C. § 552(a)(4)(E)). Such was the case here. Prior to the initiation of this lawsuit, and for some time thereafter, the government Departments named as defendants had produced *zero* documents in response to King & Spalding's April 2016 FOIA requests despite King & Spalding's very manageable and reasonable FOIA requests. *See* ECF No. 13 ¶ 9. Indeed, not until

5

December 2016—four months after King & Spalding filed suit and eight months after the initial FOIA requests—did the government begin producing the hundreds of pages of documents unquestionably due to King & Spalding under FOIA. *See* ECF No. 14 ¶ 6b; ECF No. 18 ¶ 4; Exhibits C–F.  It then supplemented those documents with an additional production in April 2017. *See* ECF No. 29 ¶ 4; Exhibit G.  Thus, even before King & Spalding won judgment on the remainder of the contested requests, it had already "substantially prevailed" for purposes of FOIA fee-shifting.

In sum, King & Spalding's initial success and ultimate victory make it eligible for an award of attorneys' fees and costs under the statute.

## II. King & Spalding Deserves an Award of Reasonable Fees, Costs, and Expenses.

In addition to being fee-eligible, King & Spalding has *earned* a fee award by forcing government transparency in the face of government intransigence. In determining whether an eligible FOIA plaintiff should actually receive fees and costs, this Court must consider "'(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the [government's] withholding' of the requested documents." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014) (quoting *Tax Analysts v. DOJ*, 965 F.3d 1092, 1093 (D.C. Cir. 1992)). Here, the public will benefit substantially from learning the cozy relationship that prompted the government to investigate Abiomed. And even if King & Spalding had some private stake in this litigation (as most plaintiffs do) that fact cannot preclude an award under this Circuit's precedents. This is especially true where, as here, the government has multiplied the costs of litigation—to both the plaintiff and the public—by stubbornly protracting it over the course of several years and multiple rounds of merits briefing. In light of these circumstances, the Court should grant King & Spalding's fee request.

### A. This Lawsuit Benefits the Public.

King & Spalding's pursuit of information related to the 2012 Abiomed investigation benefits the public at large. This Court's public-benefit consideration "requires an *ex ante* assessment of the potential public value of the information requested." *Morley v. CIA*, 810 F.3d 841, 844 (D.C. Cir. 2016). Such potential value depends on the likelihood that the requested information will bear on matters of public concern. *See Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). Those matters include the exercise of prosecutorial judgment, which is a core executive function. *See Citizens for Responsibility & Ethics in Washington v. DOJ*, 142 F. Supp. 3d 1, 7 (D.D.C. 2015); *cf. People for Ethical Treatment of Animals v. NIH*, 745 F.3d 535, 545 (D.C. Cir. 2014) ("[T]he circumstances would directly implicate the cognizable public interest in shedding light on NIH's investigatory processes.").

In this case, King & Spalding sought information likely to bear on that very concern. As mentioned above, this case began with requests for information regarding the 2012 Abiomed investigation. *See* ECF No. 20 ¶¶ 2, 10. Specifically, King & Spalding wanted to know what persons or entities communicated with the government about Abiomed prior to the investigation, as well as what information those persons or entities relayed. *See id.* From the very beginning, there was a substantial likelihood that this information would show the impetus for the investigation or, at the very least, the type of fact-gathering government regulators and attorneys were engaged in.

This was no goose chase, either. The information made public as the result of this lawsuit shows that federal prosecutors initiated a multi-year, costly, and ultimately unavailing investigation at the behest of their former colleague. Exhibit H, Items 1, 9, 10, 11, 12, & 16. That colleague's firm acted on behalf of a still unnamed third party, most probably a competitor of Abiomed. *Id.*, Item 12 (Letter to FDA dated December 21, 2010). Important standing alone,

this information takes on added significance and public consequence in light of the increased short-selling of Abiomed stock just prior to the public announcement of the investigation. ECF No. 22 at 7–8. This information offers a troubling peek behind the curtain of the Justice Department and the manner in which third parties can influence enforcement and cause reputational and financial damage to a competitor simply through an investigation.

### B.  King & Spalding's Personal Interests Do Not Preclude Relief.

Although King & Spalding had some private interest in these records and may reap some individual benefit from their release, those considerations still support a fee award here. In exercising FOIA fee-shifting authority, courts typically consider the plaintiff's private interests and benefits together. *See, e.g.*, *Davy v. CIA*, 550 F.3d 1155, 1160 (D.C. Cir. 2008). This makes good sense, as both concerns aim to "assess whether a plaintiff has 'sufficient private incentive to seek disclosure' without attorney's fees." *Id.* (quoting *Tax Analysts*, 965 F.2d at 1095). Of course, many—if not most—FOIA plaintiffs have *some* private interest in the records they seek and stand to gain *some* commercial benefit from disclosure. *See, e.g.*, *id.* Courts must therefore take care to weigh those interests in their appropriate context, accounting for the strength (or weakness) of any private incentive, the overall cost of the litigation, and the relative importance of other factors. *Cf. Reyes v. U.S. Nat'l Archives & Records Admin.*, 356 F. Supp. 3d 155, 165–66 (D.D.C. 2018) (finding the plaintiff's limited financial incentives, considered in context, minimized the importance of the private-interest factors).

In this case, context councils in favor of giving minimal weight to King & Spalding's private incentives. As explained more fully below, this lawsuit has required significant investments of time and attention over its long duration. *See infra* Part III. It need not have been so costly, but the government ensured that it was. *See infra* Part II.C. Thus, whereas the firm did eventually carry through and prevail, it is far from clear that future parties in King &

Spalding's situation will have proper incentives to do so absent some prospect of a fee award. Indeed, if the government is allowed to protract a FOIA suit like this one without any risk of fee-shifting, it will always enjoy the option to price all but the most selfless and deep-pocketed private interests out of FOIA's entitlements. This Court should avoid setting such a precedent, which would clearly undercut FOIA's basis purpose.

### C. The Government's Evasions and Foot-Dragging Warrant Fee Shifting.

Finally, the government's intransigence justifies a fee award, especially in light of King & Spalding's reasonable FOIA requests that were for a finite time, avoided any deliberative materials, and excluded Abiomed's correspondence with the government. The Court's last fee-shifting consideration should account for the government's conduct. *See, e.g.*, *Reyes*, 356 F. Supp. 3d at 166–68. To be sure, courts generally will not fault the government for attempting to withhold information under "reasonable" exemption claims. *Davy*, 550 F.3d at 1162 (quoting *Tax Analysts*, 965 F.2d at 1096). But the law also does not abide government "recalcitrant[ce] in opposition to a valid claim" or any other "obdurate behavior," especially here with such reasonable requests. *Id.* (quoting *LaSalle Extension Univ. v. FTC*, 627 F.2d 481, 486 (D.C. Cir. 1980)). The government has exhibited such obdurateness here.

To begin, this matter might not have required litigation at all but for the government's lack of responsiveness to King & Spalding's narrowly-tailored FOIA requests. Indeed, King & Spalding waited nearly four months between submitting the requests and filing suit. *See* ECF No. 1; ECF No. 20 at ¶¶ 2, 10. In that window, the government offered no basis for withholding documents aside from asserting that the Abiomed investigation was ongoing—a claim that was obviously false and eventually abandoned. *See* ECF No. 1 ¶ 12, ECF No. 10 ¶ 12.

9

Then, after the suit was filed, the government's delay tactics began in earnest. The government first sought an eighteen-day extension of time to answer the complaint. *See* ECF No. 9. It then asked for more time to file the initial joint status report. *See* ECF No. 12. When the parties finally did produce the report in late October 2016, the government refused to commit to a production deadline and instead asked to file another status report in forty-five days. *See* ECF No. 13 ¶ 8; *see also id.* ¶ 9 (noting King & Spalding's opposition to the delay). In that next report, the government for the first time asserted that King & Spalding had failed to exhaust its administrative remedies with respect to some of the requests. *See* ECF No. 14 ¶¶ 4, 11. At the same time, the government requested another thirty-day extension to produce responsive documents. *See* ECF No. 15. In the end, it was not until April 2017—a full year after the initial FOIA requests—that King & Spalding finally received all of the documents the government *agreed* King & Spalding was entitled to under FOIA. *See* ECF No. 29 ¶ 4.

The government then continued to draw this litigation out with respect to the contested redactions. In the January 2017 status report, the government requested a summary judgment briefing schedule nearly two months longer than the one King & Spalding asked for. *See* ECF No. 18 ¶¶ 7, 8. Then, following a full round of summary judgment briefing, the Court recognized that the government had not supplied the factual details necessary to support its exemption claims. *See* ECF No. 28 at 1 ("Because [the government's] affiants do not answer th[e] question [of whether the source of redacted records is an entity or an individual], the court cannot assess whether the … withholdings are appropriate at this time."). Of course, permitting the government to supplement the record only led to more delays. The government asked for a new briefing schedule nearly three months beyond what King & Spalding requested. *See* ECF No. 29 ¶¶ 12, 19. When the Court struck a compromise, the government then asked for a thirteen-day extension

on *that* schedule. *See* ECF No. 30. Then, after the second round of summary judgment briefing, the Court held that the government's evidence still could not justify redacting the name of any private law firm associated with the Abiomed investigation. *See* ECF No. 38 at 31–32. This bears repeating: Nearly *two-and-a-half years* after King & Spalding submitted these FOIA requests, the government *still had yet to establish factual predicates* for some of the principal exemptions it claimed should apply.

Even if those exemptions had been valid, it still could not excuse these persistent evasions. Indeed, the attorney and law firm names represent an extremely narrow slice of the information that the government wrongly withheld. *Cf. Reyes*, 356 F. Supp. 3d at 167–68 (finding that staffing issues and administrative delays cannot excuse a government failure to produce uncontested documents); *Piper v. DOJ*, 339 F. Supp. 2d 13, 23 (D.D.C. 2004) (looking to all of the released documents to determine the reasonableness of the government's conduct). And when this Court finally did order the information released, the government took nearly *six more months* to do so, opting instead to force King & Spalding into briefing a needless motion to amend the judgment that just rehashed the government's same tired arguments. *See* ECF Nos. 66–70.

The reasonableness of the government's legal position thus pales in comparison to its unreasonable and obdurate stall tactics. Those tactics will go unchecked unless this Court awards King & Spalding reasonable fees and costs for its trouble.

## III. King & Spalding Has Requested a Reasonable Fee Award.

King & Spalding requests an award of $664,955.87 in fees and $5,925.67 in costs and expenses, which is reasonable under the circumstances of this case. Under FOIA, a reasonable fee award must account for (1) the number of hours reasonably expended; (2) the reasonable hourly rate; and (3) incorporation of appropriate multipliers. *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988). This includes the time and effort expended

11

requesting the fees themselves.  *See, e.g.*, *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985); *Judicial Watch*, 878 F. Supp. 2d at 240.   King & Spalding thus requests such reasonable amounts as follows:

- $664,955.87 for attorneys' fees incurred during three-and-a-half years of litigation, through January 2020, before this Court, including multiple rounds of summary judgment briefing, and work on recovering attorneys' fees;

- $5,925.67 for litigation costs incurred during litigation before this Court; and

- Additional reasonable fees and expenses incurred and projected to incur to litigate this motion, include billing in February 2020 onward, to be determined at the conclusion of proceedings.

In support of these figures, King & Spalding will move to file sealed documents detailing the attorneys, rates, tasks, time, and other costs and expenses devoted to this litigation over the course of its long history.

## CONCLUSION

For the foregoing reasons, King and Spalding respectfully requests Court grant this motion for reasonable attorneys' fees and costs under FOIA.

Dated: February 3, 2020                                      Respectfully submitted,


*/s/ John C. Richter*
John C. Richter, D.C. Bar No. 1014001
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
Telephone: (202) 626-5617
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2020, I electronically filed the foregoing Motion For Attorneys' Fees and Expenses, and the proposed order, and accompanying exhibits with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ John C. Richter*
John C. Richter, D.C. Bar No. 1014001
KING & SPALDING LLP
1700 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
Telephone: (202) 626-5617
*Counsel for Plaintiff*